## ELIZABETH LANE *vs.* GEORGE W. RAYNES.

Suffolk.　March 17, 1916. — April 6, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Landlord and Tenant.　Negligence,* Of one controlling real estate.

Where the owner of a house let to a single tenant at will has agreed to make general repairs during the tenancy, and fails to keep his agreement, this does not make him liable in tort to the tenant for personal injuries sustained by the tenant by reason of the giving way of rotten steps that the owner had failed to repair after being told that they were "shaky" when apparently they were in good condition.

TORT for personal injuries caused by the falling of the outside back stairs of a house of which the defendant was the landlord and the plaintiff was the tenant.　Writ dated January 5, 1914.

In the Superior Court the case was tried before *Stevens,* J. The material evidence is described in the opinion.

At the close of the plaintiff's evidence, the presiding judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

The case was submitted on briefs.

*A. G. Sleeper,* for the plaintiff.

*R. H. Willard & W. H. Taylor,* for the defendant.

DE COURCY, J.　The plaintiff was tenant at will of the entire dwelling house and, in the absence of a special stipulation, the landlord would owe her no duty to keep the steps in a safe condition.　Her contention is that there was evidence from which the jury could find either that the landlord agreed to make such repairs as might be needed during the tenancy, or to maintain the premises in a safe condition for the tenant.　The further suggestion that the steps were in the nature of a trap, to the knowledge of the defendant, finds no support in the evidence.　*Shute* v. *Bills,* 191 Mass. 433.　*Walsh* v. *Schmidt,* 206 Mass. 405.

There is but meagre evidence bearing on the alleged agreement. The plaintiff was asked: "What conversation did you have with Mr. Brown, the defendant's agent, regarding repairs of the building?" and her reply was, "Mr. Brown told me that he would keep

the building in good repair, he would send a man up and have the building kept in good repair which he done up to that time." As she later expressed it, "Mr. Brown told me that he would send a man and have the house repaired, which he done that." A man accordingly was sent, who fixed the windows and the back gate; and the plaintiff, being satisfied with the condition of the building, moved in. She testified that about a week before the accident she talked with a man in Mr. Brown's office about the steps "being shaky," although apparently they were in good condition. At the time of the accident it could be found that the steps "broke away from the house," and that the wood was "all rotten." No repairs had been made upon them by the defendant.

It seems to us that the construction given to the alleged agreement by the presiding judge was as favorable as the plaintiff was entitled to, namely, that it was an agreement to make general repairs during the tenancy. And, as the action is in tort for actual negligence, it is not enough to show that the defendant failed to comply with his agreement to make repairs, even after notice. *Tuttle* v. *Gilbert Manuf. Co.* 145 Mass. 169. *Miles* v. *Janvrin,* 196 Mass. 431. She must go further and show that the landlord actually made the repairs, and was negligent in making them, thus causing her injury. *Galvin* v. *Beals,* 187 Mass. 250, and cases cited.

In our opinion the evidence does not support the second contention, namely, that the landlord agreed to maintain the premises in a safe condition, retaining such control as was necessary for that purpose. This does not appear to be a case where "the landlord undertakes and assumes the duty of looking after the condition of the premises in reference to safety, and of doing what is necessary for that purpose, so that the tenant properly may trust him for the performance of this duty." *Miles* v. *Janvrin,* 200 Mass. 514, 516. *Flanagan* v. *Welch,* 220 Mass. 186.

*Exceptions overruled.*