RUTH MILES *vs.* BOSTON, REVERE BEACH AND LYNN RAILROAD COMPANY.

WALTER H. MILES *vs.* SAME.

Suffolk. December 2, 1930. — January 6, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Deed*, Construction. *Negligence*, Of one owning or controlling real estate. *Way*, Private: repair, rights of family of owner of dominant estate.

By reason of a grant by deed to a railroad corporation of "the right to use and occupy" a portion of a private way "upon the express condition that" a foot bridge "with safe and suitable steps and approaches, shall be constructed by said Railroad at its own expense . . . [the right] to continue only so long as said elevated foot-bridge is maintained and kept open by said Railroad," following a statement in the deed that the grantors desired for the benefit of themselves, their heirs and assigns and "of such other persons as said Railroad may permit or allow to use the same" that "said Railroad should construct an elevated foot-bridge" across the railroad, the railroad corporation was under a duty to keep such bridge, after it had been constructed, in a safe condition for use by the grantors and their assigns and members of their families, and was liable for personal injuries resulting from a defect in a railing of the bridge to a daughter of one to whom, after such conveyance to the railroad corporation, the fee of a portion of the way had been conveyed by mesne conveyances.

Two ACTIONS OF TORT, described in the opinion. Writs dated, respectively, March 24, 1925, and November 16, 1929.

In the Superior Court, the actions were tried together before *Weed*, J., and verdicts were returned for the plaintiffs in the sums respectively of $8,500 and $200. The defendant alleged exceptions.

*L. Wheeler, Jr.*, for the defendant.
*D. L. Smith*, for the plaintiffs.

CARROLL, J. The first of these cases is an action of tort by Ruth Miles, eighteen years of age, herein called the plaintiff, who was injured by reason of falling from or on a foot bridge erected by the defendant over its tracks. The second action is by the father of Ruth to recover for medical expenses furnished to her. The original declaration alleged that, while the plaintiff was walking on a flight of stairs "which spanned the defendant's railway track on Short Street, East Boston," she was injured by reason of the defendant's negligence "in the management and control of said stairs." The amended declaration alleged that the defendant built the bridge, maintained it, invited and permitted the public and the plaintiff to travel on it, and was required to keep it in repair; that the plaintiff, travelling thereon, was injured because of the improper construction and want of repair. It does not appear that any question of pleading was involved. There was a verdict for each of the plaintiffs.

The plaintiff testified that on the day she was injured she lived on Short Street near one end of the foot bridge; that she was going down the stairs, "holding on to the rail at her right"; that as she was on "the lowest wooden step above the two concrete steps . . . the bannister swung out and she went to go with it, then righted herself and fell forward." Photographs of the bridge and of a portion of the house where the plaintiff lived were in evidence. There was further evidence for the plaintiff that "the part of the bridge that swung out was at the lowest post"; that the railing "leading down to the post on the bridge was in a very shaky condition; that the lower post wasn't firm, it was very shaky, it moved backward and forward, it wasn't solid"; that "if you had your hand on the rail the post would move four or five inches"; that the post "was loose and wobbly at the bottom and for the last two months was rotted away"; that "prior to the time of the accident . . . [the witness] noticed that every time you go down, as soon as you hit the top of the bottom post it would just sway out about a foot for the

last two months, and as soon as you left it go it would spring right back again in position."

It appeared that in 1914 a petition was brought before the proper authorities requesting a hearing on the erection of a bridge for foot travel over the defendant's tracks on Short Street. A hearing was had but no action was taken. A release from one Nelson and Louis C. Westlake, " Westlake being a former owner of the premises where plaintiff lived," to the defendant " relative to the erection of the foot bridge " was in evidence, also warranty deeds from " Louis C. Westlake to the predecessor in title of plaintiff's mother and from said predecessor in title to plaintiff's mother covering the latter's lot on Short Street."

The bridge was built by the defendant in 1914. It was agreed that in 1912 a decree was entered discontinuing the private way known as Short Street from Cowper Street to the southeasterly line of the railroad, and in substitution a new way in extension of Cowper Street was laid out. A conveyance from Nelson and Westlake dated February 5, 1914, was in evidence. It recited that Westlake, Nelson and the defendant were the sole abutters upon and owners of a certain private way, describing it; that said private way was the portion of Short Street " not discontinued by decree of the Superior Court " of March 1, 1912; that Nelson and Westlake desired for the benefit of themselves, their heirs and assigns and " of such other persons as said Railroad may permit or allow to use the same " that " said Railroad should construct an elevated foot-bridge " across the railroad; that Nelson and Westlake " hereby . . . convey " to the railroad company " the right to use and occupy any and such portion of that part of the private way above described which lies northeasterly of the middle line of said private way, as may by said Railroad be deemed necessary or convenient for the construction of steps, approaches and supports of an elevated foot-bridge extending . . . over and across the tracks of said Railroad." The portion of the way over which the steps, approaches and supports may be placed

is described. The conveyance contains this clause: "The grant herein contained is upon the express condition that" said bridge "with safe and suitable steps and approaches, shall be constructed by said Railroad at its own expense and be ready and open for use within four (4) months from the date hereof, and is to continue only so long as said elevated foot-bridge is maintained and kept open by said Railroad — it being expressly agreed and understood that, if said elevated foot-bridge shall at any time hereafter be discontinued by said Railroad," it was required upon notice by the grantors to remove from the private way all the material and structures placed thereon by virtue of the grant.

It is unnecessary to recite the evidence in detail showing that the plaintiff was injured by reason of the defective condition of the stairs. The evidence was conflicting on the question of the existence of a defect, but this was a matter for the jury to pass on. They could find that as the plaintiff was holding the rail "the bannister swung out and she went to go with it . . . and fell forward."

The bridge with its approaches was built by the defendant. It was according to the conveyance of February 5, 1914, to be constructed "with safe and suitable steps and approaches." It was to be continued only as long as the defendant maintained it and kept it open. The testimony of the defendant's master carpenter under whose direction the bridge was built showed that it was under his supervision and was frequently inspected by him.

The conveyance called for a safe and suitable structure to be maintained and kept open by the railroad company, and as we construe the agreement it was to be maintained in a condition of reasonable safety. The responsibility of keeping the bridge safe and secure belonged to the defendant. The conduct of the defendant in entrusting its supervision and inspection to its master carpenter indicates that it undertook the work of keeping it in suitable repair.

The plaintiff's mother derived her title to the premises in which the plaintiff lived and had her home from the

successor in title to Westlake, who was a party to the conveyance of February 5, 1914. Mrs. Miles had the right, therefore, under this agreement to use the bridge. It was erected for " the benefit and convenience " of the grantors "their heirs and assigns." Having the right to use the bridge which was to be maintained in a safe condition for her benefit and convenience, she could recover if injured by the defendant's neglect of its duty in respect to the bridge. Her daughter, the plaintiff, whose home was with her mother, had the same right to use the bridge. The liability of the defendant for its safety extended to the members of that household. It is familiar law that the duty owed the tenant by a landlord is not limited to the tenant. It extends to the members of the tenant's family, to one who comes upon the premises on business with the tenant, and includes all persons who within the contemplation of the parties were to use the tenement under the hiring. *Feeley* v. *Doyle,* 222 Mass. 155, 157. *Bergeron* v. *Forest,* 233 Mass. 392, 398. *Lischner* v. *Hahn,* 273 Mass. 259. This principle is not confined to the relation of landlord and tenant, as pointed out by Loring, J., in *Domenicis* v. *Fleisher,* 195 Mass. 281, at page 284; it comprises other relations; see *Maine* v. *Cumston,* 98 Mass. 317. The convenience of the owner of the land alone was not the aim of the conveyance, it was for the benefit of her family as well, and to them as well as the owner the defendant owed the duty of keeping the structure reasonably safe for travel. It was the evident aim of the defendant to give the grantors and their assignees the right to use the bridge. For this purpose the defendant agreed to construct it and keep it in repair. It was not limited to the title owners of the land conveyed, but was for the benefit and convenience of their families and the families of the assignees; see *Rice* v. *Rosenberg,* 266 Mass. 520.

*Childs* v. *Boston & Maine Railroad,* 213 Mass. 91, *Kaatz* v. *Curtis,* 215 Mass. 311, and the cases cited by the defendant, are not in conflict. The plaintiff's mother was

not merely the holder of an easement with no obligation on the servient tenant to make repairs; the railroad company agreed, as we construe the agreement considering its language and the circumstances, to keep the bridge in suitable condition for herself and the members of her family who had occasion to use it.

As the plaintiff had the right to recover as one of the family of her mother living in the house adjoining the way, it is not necessary to discuss what her rights were as one of the public in using the bridge. In each case the entry must be

*Exceptions overruled.*